UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cr-20282-BLOOM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

YOUANNY CUETO-SANCHEZ,
REINALDO BARBOSA GUEBARA,
and CARLOS GUZMAN-JAVIER,

        Defendants.
_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS INDICTMENT

**THIS CAUSE** is before the Court upon Defendants Jose Yovanny Cueto-Sanchez's ("Cueto") Motion to Dismiss Indictment, ECF No. [14], Carlos Guzman-Javier's ("Guzman") Motion to Dismiss Indictment, ECF No. [16], Reinaldo Barbosa Guebara's ("Guebara") (collectively, "Defendants") Motion to Dismiss Indictment, ECF No. [17] (collectively, "Motions"). The Government filed a Response to Defendants' Motions, ECF No. [20] ("Response"), to which Cueto filed a Reply, ECF No. [22] ("Reply"). To date, Guzman and Barbosa have not replied. The Court has considered the Motions, the record, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motions are denied.

    **I.**    **BACKGROUND**

According to the Criminal Complaint, on or about June 2, 2022, a Maritime Patrol Aircraft ("MPA") located a go-fast vessel ("GFV") operating approximately 108 nautical miles northwest of Oranjestad, Aruba in international waters upon the high seas. *See* ECF No. [1] ("Complaint"). The HNLMS GRONINGEN, manned by United States Coast Guard ("USCG") Law Enforcement Detached Team ("LEDET") 109, investigated the GFV. Defendants were on the GFV. During the

right of visit questioning, Cueto, who was the master of the vessel, claimed Dominican nationality for the vessel. Upon being contacted by U.S. authorities, the Government of the Dominican Republic could neither confirm nor deny registry of the vessel. *See id.* Accordingly, the vessel was treated as a stateless vessel under 46 U.S.C. § 70502(d)(1)(C) of the Maritime Drug Law Enforcement Act ("MDLEA"). A full law enforcement boarding ensued, and law enforcement officials found 630 kilograms of cocaine.

On June 28, 2022, Defendants were charged by Indictment with conspiracy to possess a controlled substance onboard a vessel in violation of 46 U.S.C. § 70506(b) of the MDLEA and possession with intent to distribute a controlled substance onboard a vessel in violation of 46 U.S.C. § 70503(a)(1) of the MDLEA and 18 U.S.C. § 2. ECF No. [6] ("Indictment").

Defendants now seek dismissal of the Indictment asserting that: (1) the MDLEA's definition of a "stateless" vessel in § 70502(d)(1)(C) is facially unconstitutional because it applies to vessels that are not "stateless" under customary international law and therefore exceeds Congress's authority under Article I, Section 8, Clause 10 ("Felonies Clause"); (2) the United States' authority pursuant to the MDLEA is limited to offenses occurring on the "high Seas," and the alleged offenses did not take place on the "high Seas" because the offenses took place within the Exclusive Economic Zone ("EEZ") of Venezuela; and (3) Congress's power under the Felonies Clause is limited to offenses bearing a nexus to the United States and the exercise of jurisdiction over Defendants violates Due Process. *See* ECF Nos. [14], [16], [17]. With regard to Defendants' first argument, Defendants rely on *United States v. Davila-Reyes*, 23 F. 4th 153 (1st Cir. 2022). There, the First Circuit held that 46 U.S.C. § 70502(d)(1)(C) is facially unconstitutional because

the provision applies to vessels that are not "stateless" under customary international law and therefore exceeds Congress's authority under the Felonies Clause.[1]

The Government responds that Defendants' arguments are foreclosed by binding Eleventh Circuit precedent. *See* ECF No. [20] (citing *United States v. Hernandez*, 864 F.3d 1292 (11th Cir. 2017); *United States v. Campbell*, 743 F.3d 802 (11th Cir. 2014)). That precedent expressly upholds MDLEA prosecutions in cases where the vessel's claimed nation of registry could not corroborate the registry claim and cases where vessels were deemed to be on the high seas because they were outside territorial waters.

## II.   LEGAL STANDARD

### a. Motion to Dismiss Indictment

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b). A defendant may challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012). "Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have developed at trial." *United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir. 1987). Further, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir. 1992). "The indictment is sufficient if it charges in the language of the statute." *Id.* "Constitutional requirements are fulfilled 'by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime.'" *Id.* at 308; *see also United States v. Cole*, 755 F.2d 748, 760

---

[1] The First Circuit subsequently issued an order granting a petition for rehearing *en banc*. *See United States v. Davila-Reyes*, 38 F.4th 288 (1st Cir. 2022). The panel opinion, therefore, has been withdrawn. *See id.* at 288.

(11th Cir. 1985). The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government. *See Torkington*, 812 F.2d at 1354.

### b. MDLEA

The Felonies Clause of the U.S. Constitution grants Congress the power to "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations[.]" U.S. Const. art. 1, § 8, cl. 10. Pursuant to the Felonies Clause, Congress enacted the MDLEA, which makes drug trafficking on certain vessels in the high seas subject to the jurisdiction of the United States. 46 U.S.C. §§ 70501 *et seq.* The MDLEA applies to all cases where the alleged trafficking occurs on a "vessel subject to the jurisdiction of the United States[.]" 46 U.S.C. § 70503(e)(1). The MDLEA further defines a vessel subject to the jurisdiction of the United States to include "(C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1)(C).

## III.   DISCUSSION

### a. MDLEA's Definition of a Stateless Vessel

Defendants first argue that the Indictment must be dismissed because 46 U.S.C. § 70502(d)(1)(C) of the MDLEA is facially unconstitutional. *See* ECF Nos. [14] at 4-12, [16] at 5-14, [17] at 4-12. According to Defendants, Congress's authority under the Felonies Clause to "define and punish . . . Felonies committed on the high Seas" is limited by customary international law. *See* ECF Nos. [14] at 5, [16] at 6, [17] at 5. International law only allows jurisdiction over stateless vessels. *See* ECF Nos. [14] at 8, [16] at 9, [17] at 8 (citing *Davila-Reyes*, 23 F.4th at 180). When a master or individual in charge of a vessel makes a claim of nationality, international law considers the vessel to have established a *prima facie* showing of nationality that does not render the vessel stateless, even if the claimed nation of registry does not confirm or deny the nationality

of the vessel. *See* ECF Nos. [14] at 8, [16] at 10, [17] at 9. In contrast, § 70502(d)(1)(C) of the MDLEA confers jurisdiction over a vessel if the master or individual in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality. As such, Defendants submit that § 70502(d)(1)(C) of the MDLEA is facially unconstitutional because it extends beyond Congress's constitutional authority under the Felonies Clause.

Defendants further argue that the Eleventh Circuit has not addressed the issue and the Court should consider the First Circuit's holding in *Davila-Reyes*. *See* ECF Nos. [14] at 9-12, [16] at 11-14, [17] at 10-12. According to Defendants, *Hernandez*, 864 F.3d 1292, involved a statutory challenge pursuant to the MDLEA rather than a constitutional challenge of the MDLEA. *See* ECF Nos. [14] at 9-10, [16] at 11, [17] at 10. Defendants claim that the defendants in *Hernandez* argued unavailingly that the Government failed to establish jurisdiction pursuant to § 70502(d)(1)(C) because the vessel was not actually stateless. *See* ECF Nos. [14] at 10, [16] at 11, [17] at 10. The defendants in *Hernandez* did not challenge the constitutionality of § 70502(d)(1)(C).

The Government responds that Defendants misinterpret binding Eleventh Circuit precedent, namely *Hernandez*, 864 F.3d at 1303, where Guatemala "had not 'affirmatively and unequivocally' asserted that [the vessel] was of Guatemalan nationality," and *Campbell*, 743 F.3d at 809-810, where Haiti "could neither confirm nor deny the registry" claim. *See* ECF No. [20] at 2. According to the Government, the two cases presented the identical criminal offense and factual circumstances as the instant case, and the Eleventh Circuit held that the MDLEA conferred jurisdiction over the defendants. *See id.* at 15-16. Further, in *Hernandez*, the Eleventh Circuit specifically held that "the MDLEA was a constitutional exercise of Congressional authority under the Felonies Clause." *See id.* at 16 (citing 864 F.3d at 1303). In *Campbell*, the Eleventh Circuit rejected the defendant's "argu[ment] that Congress lacked the power under the Felonies Clause to

define his conduct as a criminal offense," thereby upholding the constitutionality of the MDLEA under the Felonies Clause. *See id.* at 5 (citing 743 F.3d at 806). Given binding Eleventh Circuit precedent, the Government argues that Defendants' reliance on the First Circuit's decision in *Davila-Reyes* is misplaced. *See id.* at 6-7.

In addition, the Government submits that, as a necessary predicate for the First Circuit's holding that the MDLEA violated the Felonies Clause by not complying with international law, the First Circuit rejected the Government's argument that the "protective principle" of international law permits the MDLEA's conferral of jurisdiction over the defendants' vessel. *See id.* at 14 (citing *Davila-Reyes*, 23 F.4th at 161). The protective principle is "the right of a state to punish a limited class of offenses committed outside its territory by persons who are not its nationals – offenses directed against the security of the state or other offenses threatening the integrity of governmental functions that are generally recognized as crimes by developed legal systems." Restatement (Third) of Foreign Relations § 402, cmt. f (1987). The First Circuit did "not view the protective principle as supporting U.S. jurisdiction over drug-trafficking activity conducted on the high seas by foreign nationals on foreign vessels." *Davila-Reyes*, 23 F.4th at 161. In contrast, the Eleventh Circuit has repeatedly justified the MDLEA's assertion of jurisdiction over foreign nationals trafficking drugs on the high seas by expressly referencing the United States' rights under the protective principle. *See, e.g.*, *United States v. Tinoco*, 304 F.3d 1088, 1108 (11th Cir. 2002); *United States v. Persaud*, 605 F. App'x 791, 795 (11th Cir. 2015). As such, the Government avers that the First Circuit's holding relies on a predicate that is foreclosed by Eleventh Circuit precedent. *See* ECF No. [20] at 13-14.

Furthermore, the Government raises several arguments suggesting that *Davila-Reyes* was wrongly decided. First, the Government submits that the text of the Felonies Clause indicates that Congress's power to define and punish felonies committed on the high seas is not limited by

6

international law. *See id.* at 7. Unlike Congress's power to criminalize piracy or offenses against the law of nations, which stems from universal jurisdiction over crimes recognized by international law, Congress's power to criminalize felonies committed on the high seas does not depend on universal jurisdiction. *See id.* at 11. Instead, the Constitution allows Congress to prohibit conduct on the high seas – conduct other than piracy and offenses against the law of nations – irrespective of universal jurisdiction. *See id.* The Government argues that the Framers chose not to include language to limit Congress's power to define and punish felonies committed on the high seas to the bounds of international law, and that the Court should not read into the Constitution an international law limit where there is none. *See id.* at 11-12. As such, the Government argues that the MDLEA is not facially unconstitutional because the Felonies Clause is not bound by international law.

Second, even if the Felonies Clause was limited by international law, the Government contends that the plain text of § 70502(d)(1)(C) reflects Congress's clear intent to assert jurisdiction over vessels when the purported nation of registry does not corroborate the claim. *See id.* at 8. "'[I]f a statute makes plain Congress's intent,' a court 'must enforce the intent of Congress irrespective of whether the statute conforms to customary international law.'" *United States v. Ballestas*, 795 F.3d 138, 144 (D.C. Cir. 2015) (quoting *United States v. Yousef*, 327 F.3d 56, 93 (2d Cir. 2003)). "After all, 'Congress is not bound by international law,' so 'it may legislate with respect to conduct outside the United States, in excess of the limits posed by international law.'" *Id.* at 144 (quoting *Yousef*, 327 F.3d at 86). While international law is relevant for purposes of statutory construction and courts should employ the "Charming Betsy" canon of construction to avoid finding conflicts with international law, *see Murray v. Schooner Charming Betsy*, 6 U.S. 64 (1804) ("[A]n act of congress ought never to be construed to violate the law of nations if any other possible construction remains."), if there is clear Congressional intent to act contrary to

international law, such Congressional intent must be given effect. *See United States v. Yunis*, 924 F.2d 1086, 1091 (D.C. Cir. 1991). As such, the Government submits that to the extent that a plain reading of the MDLEA indicates Congressional intent to confer jurisdiction over vessels whose nationality cannot be confirmed or denied, in contravention of international law, the Court must give the MDLEA that effect. *See* ECF No. [20] at 8.

Third, the Government argues that *Davila-Reyes* was wrongly decided because it misapplies international law. *See* ECF No. [20] at 17-19. The MDLEA states that "[a] claim of failure to comply with international law in the enforcement of [the MDLEA] may be made only by a foreign nation. A failure to comply with international law . . . is not a defense to a proceeding under this chapter." 46 U.S.C. § 70505. Therefore, the Government argues that defendants cannot rely on alleged violations of international law as a defense under the MDLEA. *See* ECF No. [20] at 17-19. Moreover, the Government stresses that the Eleventh Circuit has held that the MDLEA's jurisdictional provisions are intended to "allocate power between the courts and the executive as to which of the two will be responsible for complying with U.S. obligations under the international law of criminal jurisdiction." *Id.* at 18 (quoting *Hernandez*, 864 F.3d at 1303-04). As such, to the extent that there are any questions about the status of a defendant's vessel under international law, the challenge should be brought by a sovereign nation and "dealt with diplomatically and not by the courts." *Hernandez*, 864 F.3d at 1304.

The Court agrees with the Government. While Defendants argue that the Eleventh Circuit in *Hernandez*, 864 F.3d at 1303, addressed a statutory challenge under the MDLEA rather than a constitutional challenge of the MDLEA, the Eleventh Circuit expressly upheld the constitutionality of the MDLEA with respect to the Felonies Clause in rejecting the defendants' statutory challenge. The Eleventh Circuit stated that "the MDLEA was a constitutional exercise of Congressional authority under the Felonies Clause." 864 F.3d at 1303 (citing *Campbell*, 743 F.3d at 809-10).

8

Further, although Defendants argue that *Campbell* dealt with other constitutional challenges and not the specific argument that the Felonies Clause is textually limited by international law, the Eleventh Circuit rejected the defendant's constitutional challenges and the defendant's overarching argument that "Congress lacked the power under the Felonies Clause to define [the defendant's] conduct as a criminal offense." 743 F.3d at 806. In holding that Congress did have the power under the Felonies Clause to enact the MDLEA's jurisdictional provisions and criminalize the defendant's conduct, which is identical to Defendants' conduct here, the Eleventh Circuit effectively foreclosed Defendants' argument that Congress did not have the power under the Felonies Clause to enact the MDLEA's jurisdictional provisions. Thus, a plain reading of the Eleventh Circuit's holdings in both cases indicates that the Eleventh Circuit has upheld the constitutionality of the MDLEA under the Felonies Clause.

The Court is not persuaded by Defendants' argument that the Court is not bound by the prior Eleventh Circuit decisions because the Eleventh Circuit did not expressly consider whether the MDLEA violates the Felonies Clause in light of customary international law. Although "[q]uestions which merely lurk in the record . . . are not to be considered as having been so decided as to constitute precedents," *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004), in the instant case, Defendants' argument did not merely "lurk" in the record of the two Eleventh Circuit cases. Rather, the Eleventh Circuit considered jurisdictional arguments related to the prosecution of identical criminal conduct in identical factual circumstances pursuant to the identical provision of the MDLEA as the instant case. *See Campbell*, 743 F.3d 802; *Hernandez*, 864 F.3d 1292. As noted above, *Campbell* further considered related constitutional challenges based on the Felonies Clause, and both *Campbell* and *Hernandez* expressly upheld the constitutionality of the MDLEA with respect to the Felonies Clause. To the extent that Defendants raise a specific argument that the MDLEA violates the Felonies Clause because of customary

international law, the Eleventh Circuit instructs courts that "overlooked reason[s] or argument[s]" do not create an excuse to overlook the binding authority of precedent. *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015). Therefore, the Court declines Defendants' invitation to overlook binding precedent establishing the constitutionality of the MDLEA and to instead rely on Defendants' presumption that the Eleventh Circuit did not fully consider an additional argument purportedly rendering the MDLEA unconstitutional.

Lastly, assuming the Felonies Clause is bound by international law, the Eleventh Circuit has repeatedly permitted the United States to assert jurisdiction over foreign nationals trafficking drugs on the high seas by referencing the United States' rights under the protective principle of international law. *See, e.g.*, *Tinoco*, 304 F.3d at 1108; *Persaud*, 605 F. App'x at 795. Therefore, even if the Felonies Clause is bound by international law, Eleventh Circuit precedent establishes that the MDLEA does not contravene international law and is instead appropriately based on the protective principle of international law. Eleventh Circuit precedent establishes that Congress did not overstep its authority in enacting the MDLEA under the Felonies Clause by violating international law because the protective principle of international law permits MDLEA's conferral of jurisdiction over vessels whose nationality cannot be confirmed.

As such, Defendants' Motions are denied on this basis, and the Court need not address the Government's argument that *Davila-Reyes* was wrongly decided.

### b. Offenses Occurring on the High Seas

Defendants argue that the United States' authority pursuant to the MDLEA is limited to offenses occurring on the high seas, and because these offenses took place within the Exclusive Economic Zone ("EEZ") of Venezuela, they did not occur on the high seas. *See* ECF Nos. [14] at 12-17, [16] at 14-19, [17] at 13-17. Defendants reiterate that the Felonies Clause grants Congress the authority to "define and punish Piracies and Felonies committed on the high Seas, and Offences

against the Law of Nations" U.S. Const. art. I, § 8, cl. 10. According to Defendants, Congress's power to "define" offenses against the law of nations means that Congress has the power "to codify and explain offenses that had already been understood as offenses against the law of nations[,]" not to "create or declare offenses against the law of nations." *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1249-50 (11th Cir. 2012). Following Defendants' logic, the same reasoning and limitations should apply to Congress's power to "define" felonies on the high seas. *See* ECF Nos. [14] at 16, [16] at 18, [17] at 16. Thus, Defendants submit that the "high Seas" referenced in the Felonies Clause should be construed according to the definition of the high seas under customary international law. Further, Defendants posit that

> [u]nder customary international law as reflected in the 1982 United Nations Convention on the Law of the Sea and without prejudice to high seas freedoms that may be exercised within exclusive economic zones pursuant to article 58 of the United Nations Convention on the Law of the Sea, and unless the context clearly requires otherwise . . . *the high seas means waters that are not the exclusive economic zone* (as defined in § 2.30), territorial sea (as defined in § 2.22), or internal waters of the United States or any other nation.

33 C.F.R. § 2.32(d) (emphasis added). As such, Defendants argue that because the alleged offenses took place within the EEZ of Venezuela, they did not occur on the high seas, and the Indictment must be dismissed. *See* ECF Nos. [14] at 16-17, [16] at 19, [17] at 17.

The Government responds that the MDLEA may be enforced within a foreign nation's EEZ because an EEZ is not a part of a foreign nation's territorial waters but rather a part of the high seas. *See* ECF No. [20] at 19-27. The Government submits that a vessel outside the recognized twelve-mile limit of a nation's territorial seas is a "vessel located within international waters" and subject to MDLEA jurisdiction, even if the vessel is within a foreign nation's EEZ. ECF No. [20] at 21-22 (citing *McPhee*, 336 F.3d at 1273 (citing 33 C.F.R. § 2.05-1's definition of the "high seas" as "all waters which are neither territorial seas nor internal waters of the United States or of any foreign country"); *United States v. Rioseco*, 845 F.2d 299, 300 (11th Cir. 1988) (affirming a Lacey

Act conviction of a vessel stopped by the Coast Guard in "an area of the high seas that the United States acknowledges to be within the Bahamas' exclusive economic zone"); *United States v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015) ("The EEZ bordering a particular nation's territorial sea is merely a part of the high seas where that nation has special economic rights and jurisdiction.")).

The Court agrees with the Government. As all parties agree, the material question is whether the EEZ is a part of the high seas. Despite Defendants' contention, the Eleventh Circuit expressly stated in *McPhee* that if a vessel was outside the "twelve-mile Bahamian territorial boundary," then the vessel was "in international waters or at 'high seas' at that time." 336 F.3d at 1276. The fact that the Eleventh Circuit did not also consider whether the vessel was on the "high seas" as that term is defined for purposes of the Felonies Clause is inapposite, considering the Eleventh Circuit's holding that establishes that a vessel located beyond territorial waters was at high seas. *See id.* The Court again declines Defendants' invitation to overlook binding precedent indicating that the EEZ beyond the twelve-mile territorial boundary is a part of the high seas.

Furthermore, to the extent that Defendants argue that the Court should look to 33 C.F.R. § 2.32(d)'s definition of the high seas, which excludes EEZs, the Court is not persuaded. The pertinent definition of high seas for purposes of criminal enforcement jurisdiction is found in § 2.32(c), not § 2.32(d). Section 2.32(c) expressly defines "high seas" – for the purposes of criminal enforcement jurisdiction pursuant to 14 U.S.C. § 522[2] – to include the "*exclusive economic zones of the United States and other nations*, as well as those waters that are seaward of territorial seas of the United States and other nations." 33 C.F.R. § 2.32(c) (emphasis added). Thus, both controlling Eleventh Circuit precedent and federal regulations defining high seas for the

---

[2] Title 14 U.S.C. § 522 states, in relevant part, "[t]he Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States."

purposes of enforcing the MDLEA define high seas as all waters seaward of any nation's twelve-mile territorial sea limit, including EEZs.

As such, Defendants' Motions are denied as to this matter. Given binding Eleventh Circuit precedent and federal regulations, the Court need not address the Government's other arguments.

### c. Nexus to the United States and Due Process

Defendants argue, for preservation purposes, that the Indictment must be dismissed because Defendants and their alleged criminal conduct do not have any ties to the United States. *See* ECF Nos. [14] at 17-20, [16] at 19-22, [17] at 18-20. According to Defendants, Congress's power under the Felonies Clause does not extend to offenses bearing no nexus to the United States, and this Court's exercise of *in personam* jurisdiction over Defendants violates the Due Process Clause. *See id.* The Government does not address Defendants' argument on this matter. *See generally* ECF No. [20].

The Eleventh Circuit has rejected challenges to the MDLEA's constitutionality as applied to unregistered vessels on the high seas with no ties to the United States. *See, e.g.*, *United States v. Campbell*, 734 F.3d 802, 806 (11th Cir. 2014); *United States v. Cruickshank*, 837 F.3d 1182, 1190 (11th Cir. 2016); *United States v. Estupinan*, 453 F.3d 1336, 1338 n.2 (11th Cir. 2006); *United States v. De La Garza*, 516 F.3d 1266, 1272 (11th Cir. 2008); *United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir. 2003); *United States v. Marino-Garcia*, 679 F.2d 1373, 1383 (11th Cir. 1982). The Eleventh Circuit has further held that "the Due Process Clause of the Fifth Amendment does not prohibit the trial and conviction of an alien captured on the high seas while drug trafficking, because the [MDLEA] provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." *Campbell*, 743 F.3d at 812 (internal quotation marks and citations omitted). Further, "this [C]ircuit and other circuits have not embellished the [MDLEA] with the requirement of a nexus between a defendant's criminal conduct and the United

States." *Id.* at 810 (citing *Estupinan*, 453 F.3d at 1338). Therefore, in light of binding Eleventh Circuit precedent, the Court need not proceed further, and the Motions are denied as to this matter.

### IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motions, **ECF Nos. [14], [16], [17]**, are **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 26, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record